# No. 07-2554

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

**NATIONAL LABOR RELATIONS BOARD**,
*Petitioner*,

v.

**BEACON ELECTRIC COMPANY**,
*Respondent*.

Petition to Enforce Order of the National Labor Relations Board
Originating Case No. 09-CA-35127

_____

## SUPPLEMENTAL BRIEF OF RESPONDENT
_____

FRED A. UNGERMAN, JR.
TIMOTHY G. PEPPER
**TAFT STETTINIUS & HOLLISTER LLP**
110 NORTH MAIN STREET, SUITE 900
DAYTON, OHIO 45402
PHONE:      (937) 228-2838
FAX:        (937) 228-2816

*Counsel for Respondent*

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION AND SHORT ANSWER | 4 |
| II. | BACKGROUND | 4 |
| III. | ANALYSIS | 9 |
| | A. What is the difference between <u>Toering</u> and <u>FES</u>? | 9 |
| | B. Does this difference concern the APA or the NLRA? | 11 |
| | C. The NLRB's Allocations of Burden of Proof under the APA Receive No Deference from this Court | 12 |
| IV. | THE NLRB'S ORDER AT ISSUE IN THIS CASE IS NOT ENFORCEABLE REGARDLESS OF THE RESOLUTION OF THE COURT'S QUESTION | 17 |
| V. | CONCLUSION | 18 |

# **TABLE OF AUTHORITIES**

**CASES**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE**

Director, Office of Workers' Compensation Programs
　　v. Greenwich Collieries, 512 U.S. 267 (1994)　　　　　　　　12

FES, a Div. of Thermo Power, 331 NLRB 9 (2000)　　　　　　　passim

Fluor Daniel, Inc. v. NLRB, 332 F.3d 961 (6th Cir. 2003)　　　　7, 8

Garvey v. Nat'l Transportation Safety Board,
　　190 F.3d 571 (D.C. Cir. 1999)　　　　　　　　　　　　　　　13, 16

Glen Coal Co. v. Seals, 147 F.3d 502, 512 (6th Cir. 1998)　　　　13, 16

NLRB v. Fluor Daniel, Inc., 161 F.3d 953 (6th Cir. 1998)　　　　passim

Toering Electric Co., 351 NLRB No. 18 (2007)　　　　　　　　　passim

**STATUTES & RULES**

5 U.S.C. § 556(d) (APA § 7(c))　　　　　　　　　　　　　　　　passim

Fed. R. Evid. 301　　　　　　　　　　　　　　　　　　　　　　　12

## I.    INTRODUCTION AND SHORT ANSWER

The Court has given the parties the opportunity to brief the following question:

> "Does the difference between the [NLRB's] decision in *Toering Elec. Co. . . . and FES* . . . concern the National Labor Relations Act, as to which we must accord deference to the Board's interpretation, or the allocation of burdens under the Administrative Procedure Act, as to which we do not?"

The short answer to the Court's question is that the difference concerns solely the Administrative Procedure Act ("APA"). Accordingly, this Court owes no deference to that difference or to any National Labor Relations Board ("NLRB") position regarding the allocation of the burden of proof on the issue of whether alleged discriminatees are bona fide applicants who are entitled to the protection of the National Labor Relations Act ("NLRA").

## II.   BACKGROUND

FES[1] and Toering[2] are two steps in the evolution of the law pertaining to salting activity. The last ten years have seen a number of changes in that law announced by both the Courts of Appeal and the NLRB. A brief examination of those changes, and the interplay between the Courts and the NLRB on these issues,

---

[1] FES, a Div. of Thermo Power, 331 NLRB 9 (2000).

[2] Toering Electric Co., 351 NLRB No. 18 (2007).

will help place <u>FES</u> and <u>Toering</u> in context and shed light on the answer to the question posed by the Court.

Before 2000, the NLRB took the position that an unlawful refusal to hire violation could occur without proof that the employer had an open position for which each alleged discriminatee was qualified. In other words, the NLRB held that the General Counsel could establish a refusal-to-hire violation by proving: (1) the existence of anti-union animus on the part of the employer, and (2) that there were some job vacancies. That standard produced inequitable results, as employers were found to be in violation of the NLRA for failing to hire individuals even when they had no open positions for those individuals to fill.

In 1998, this Court rejected the NLRB's formulation in its <u>Fluor Daniel</u>[3] decision. It explained that the General Counsel must prove: (1) that the employer was motivated by antiunion animus; (2) that actual jobs were available for each alleged discriminatee; and (3) that the alleged discriminatees were qualified to perform those jobs. The Court recognized that an employer cannot be liable for refusing to hire if "jobs do not exist [for that applicant] or have already been filled."[4] Absent such evidence, the General Counsel could not prove one of the

---

[3] <u>NLRB v. Fluor Daniel, Inc.</u>, 161 F.3d 953 (6th Cir. 1998).

[4] <u>Id</u>. at 967.

threshold elements of a refusal-to-hire violation – i.e., that the discrimination occurred "in regard to hire."[5]

This Court in Fluor Daniel plainly addressed and rejected the NLRB's assertion that it could hold the employer liable "regardless of whether jobs were available at the time of application."[6] In so doing, the Court summed up the problem as follows: "we hold that [to do otherwise] . . . would impermissibly shift the burden of persuasion on an element of the statutory violation," in violation of Section 7(c) of the APA.[7] The NLRB "cannot shift the burden of persuasion as to an element of the General Counsel's case."[8] In so holding, the Court made it clear that allowing the General Counsel to prevail without proving an element of its claim is a violation of Section 7(c). Such a procedural rule is more than a presumption, which could be rebutted by the employer. Instead, it unlawfully permits the General Counsel to win a case without proving that the NLRA applied to the conduct in question, and therefore it prevents the employer from bringing forward evidence challenging its application.

The NLRB expressly responded to the Court's Fluor Daniel decision, and similar decisions from other Courts of Appeal, in 2000. In FES, the NLRB

---

[5] Id.

[6] Id. at n.16.

[7] Id.

[8] Id.

recognized the following elements of the General Counsel's burden of proof in refusal-to-hire cases where there is evidence that the respondent has hired employees or had openings available:

> "the General Counsel must show at the hearing on the merits [1] the number of openings that were available, [2] that the applicants had the training or experience relevant to the openings, and [3] that antiunion animus contributed to the respondent's decision not to hire the applicants for the openings."[9]

The NLRB's FES decision did not address whether the General Counsel is required to establish that the alleged discriminatees are bona fide applicants protected by the NLRA.  Nowhere in the NLRB's Decision and Order, or the underlying Administrative Law Judge's Decision, does anyone make mention of a controversy over whether the alleged discriminatees in that case were protected by the NLRA.  Instead, the issue was whether an unlawful refusal to hire admittedly protected individuals had occurred.[10]  The NLRB's Decision and Order omits any discussion of the bona fide applicant issue, because it was not presented for resolution in that case.

This Court's next occasion to consider the issue occurred in 2003, when Fluor Daniel made its way back for review.  This time – after the NLRB's FES

---

[9] FES, 331 NLRB at 14.

[10] Member Brame, in a long and scholarly concurrence that explores issues well beyond the facts of the case, correctly notes that a more thorough statement of the General Counsel's burden of proof would include the threshold requirement that "the alleged discriminatee actually sought work with the employer" and, therefore, were protected by the NLRA.  Id. at 26.

decision had acknowledged the Court's application of the APA in 1998 – the Court approved the NLRB's use of <u>FES</u> as applied to the facts before it.[11]  Like the NLRB's decision in <u>FES</u> itself, nothing in this Court's 2003 <u>Fluor Daniel</u> decision addresses the allocation of the burden of proof with respect to bona fide applicant status because it was not an issue in that case.

Moving forward to <u>Toering</u> in 2007, the NLRB did not alter the elements of its holding in <u>FES</u>.  Rather, the NLRB recognized that in cases where the protection of an alleged discriminatee under the NLRA is an issue,[12] the General Counsel also bears the burden of proving, as a threshold matter, that the NLRA protects those individuals.  As the NLRB described it, "[<u>Toering</u>]. . . will insure [sic] that only those for whom Congress intended statutory protection as actual or potential employees will receive it."[13]  In other words, the NLRB recognized that no liability for a violation of the NLRA can occur and be proven unless the NLRA itself applies.

The NLRB's <u>Toering</u> decision then provided guidance on the details of the General Counsel's burden of proof by holding that the General Counsel must establish that "(1) there was an application for employment, and (2) the application

---

[11] <u>Fluor Daniel, Inc. v. NLRB</u>, 332 F.3d 961 (6th Cir. 2003).

[12] The NLRB has not contested that Beacon placed the applicability of the NLRA at issue in the unfair labor practice proceeding in this case.

[13] <u>Toering</u>, 351 NLRB No. 18, at 3.

reflected a genuine interest in becoming employed by the employer."[14] After this showing, all of the traditional elements of an FES refusal-to-hire case would apply as well, and the General Counsel would continue to bear the burden of proof on those elements.

### III.  ANALYSIS

There are two aspects to the question posited by this Court: (1) what is the difference between Toering and FES, and (2) does that difference concern the NLRA or the APA. Both of these aspects are addressed below.

#### A.  What is the difference between Toering and FES?

As discussed in the background section above, the FES decision was a reactive decision by the NLRB that addressed an APA problem identified by this Court. The decision recognized additional elements in refusal-to-hire cases identified by this Court. It required the General Counsel to prove that an actual job was available for each alleged discriminatee and that each discriminatee was qualified to perform the job in question. To address the APA concerns raised by this Court, the NLRB made it clear that the burden of proof on these elements rested with the General Counsel and had to be established in the NLRB's case in chief. The question of whether the alleged discriminatees in FES were bona fide

---

[14] Id. at 11.

applicants who were protected by the NLRA was neither raised nor addressed by this decision.

Conversely, the Toering decision is a proactive decision by the Board. It directly addresses the issue of whether the General Counsel should bear the burden of establishing that alleged discriminatees are protected by the NLRA. In Toering, the NLRB correctly recognized – without the prodding of this Court or others – that the burden of proving whether an individual is a bona fide applicant rests squarely with the General Counsel. Thus, Toering recognizes a new element that was not addressed or recognized in FES.

Toering and the cases which led to the NLRB's decision in FES also reveal some material similarities. Necessary elements of proof to establish a violation were recognized in both cases, and in both cases the burden of proof for establishing those elements was recognized as being the General Counsel's. Both decisions also involve recognizing additional elements in what are known as "salting" cases. In both cases, the failure to include these elements as part of the General Counsel's case in chief resulted in shifting the burden of proof on the issue from the General Counsel to the employer or, worse yet, denying the employer any right to confront the issue at all.

### B.     Does this difference concern the APA or the NLRA?

The new and different element recognized in Toering, but not FES, is a matter of great import. The requirement that the General Counsel has to establish in the case in chief that an alleged discriminatee is a bona fide applicant places the burden of proof where it should be in all such matters – with the General Counsel. Simply put, Toering recognized this issue, where FES did not.

In the case at bar, FES's failure to recognize both this element and the General Counsel's burden of proof on this element impermissibly shifted the burden of persuasion on an element of the statutory violation to Beacon in violation of Section 7(c) of the APA.[15] This Court has held that allowing the General Counsel to prevail without proving an element of its claim is a violation of Section 7(c), and that is exactly what happened to Beacon. Not requiring the General Counsel to establish in this case that the alleged discriminatees were bona fide applicants entitled to the protection of the NLRA involved more than a mere presumption, which could have been rebutted by Beacon. Rather, this approach gave the General Counsel license to win its case without proving that the NLRA applied to the conduct in question, and without allowing Beacon to bring forward evidence challenging its application.

---

[15] As explained in Section IV of this Supplemental Brief, the NLRB actually went further and precluded Beacon from even attempting to meet that burden of proof.

### C. The NLRB's Allocations of Burden of Proof under the APA Receive No Deference from this Court

Section 7(c) of the APA provides that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof."[16] The Supreme Court explains that "burden of proof" under Section 7(c) is the "burden of persuasion," i.e., the standard of proof, such as preponderance of the evidence, by which the proponent must persuade the trier of fact of a proposition.[17] The burden of proof is different from the "burden of production," which is the burden to go forward with evidence.[18]

A federal agency violates Section 7(c) when it shifts the burden of proof from the proponent to the opponent.[19] In Greenwich Collieries, the Supreme Court reviewed the "true doubt" rule that was used by the Department of Labor in adjudication of Black Lung Benefits Act cases. The true doubt rule provided that when the evidence "was equally balanced" between the claimant and respondent,

---

[16] 5 U.S.C. § 556(d).

[17] Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 512 U.S. 267, 275-79 (1994).

[18] Id. at 272. See also Fed. R. Evid. 301 ("A presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.").

[19] Id. at 281.

the claimant won.[20] Thus, the true doubt rule shifted the burden of proof from the proponent to the opponent, because the claimant-proponent was given the benefit of the doubt. The claimant no longer had to prove its case by a preponderance of the evidence; the burden was on the respondent to prove its case by more evidence than the claimant.

The Court distinguished the true doubt rule from "presumptions" created by statute or adopted by regulation, noting that the true doubt rule went "one step further" than a presumption by changing who must prove what.[21] The Sixth Circuit subsequently noted in Glen Coal Co. v. Seals[22] that a presumption "merely reallocated the burden of production" and thus does not violate Section 7(c).[23]

The Sixth Circuit recognized the difference between a run-of-the-mill presumption and a rule that relieves the General Counsel of the necessity of proving an element of its case in its 1998 Fluor Daniel decision, discussed above. Comparing this Court's Glen Coal and Fluor Daniel decisions illustrates the difference between a permissible presumption and an impermissible attempt to avoid proving an element of the alleged violation. Glen Coal involved the Black

---

[20] Id.

[21] Id. at 280.

[22] 147 F.3d 502, 512 (6th Cir. 1998).

[23] See also Garvey v. Nat'l Transportation Safety Board, 190 F.3d 571 (D.C. Cir. 1999) ("every Circuit that has considered the issue since [Greenwich Collieries] has concluded that a presumption that shifts only the burden of production does not shift the 'burden of proof'").

Lung Benefits Act. The presumption was that if a miner proved in stage one of the proceeding that he or she was totally disabled due to a particular lung condition, then the miner did not have to provide additional evidence to prove that medical costs were related to that condition in stage two. The employer had the opportunity to prove that the costs were unrelated.[24] The Court explained that "the only thing that changes is that the claimant's initial burden of coming forward with evidence is eased. . . . The presumption does not change the fact that the claimant still bears the burden of proof . . ., rather it allows him to satisfy his burden of production" by relying on evidence that he already produced in the first stage.[25] Such a presumption does not implicate Section 7(c) of the APA.

As noted above, the Fluor Daniel case involved a situation in which the General Counsel did not even have to offer any proof of an element of its claim. There was no opportunity for the employer to rebut the presumption. The General Counsel had no burden to prove its claim. To proceed, then, under the conclusive assumption or presumption that an element of the claim is satisfied without requiring the General Counsel to bring forward any evidence impermissibly shifts (or destroys) the burden of proof and is entitled to no deference under Section 7(c) of the APA. On the other hand, creating a rebuttable presumption that the burden

---

[24] Glen Coal Co., 147 F.3d at 512.

[25] Id.

of production is satisfied by a showing of evidence as to an element is merely a reallocation of the burden of production – which shifts only the burden of production to the respondent – and is entitled to judicial deference.

The NLRB's allocations of the burdens of proof in its Beacon and <u>Toering</u> decisions – and in its <u>FES</u> decision, to the extent that such an allocation was made in that case – are not entitled to judicial deference, because all such allocations were made under Section 7(c) of the APA.

As discussed above, the NLRB's <u>FES</u> decision did not allocate the burden of proving that the NLRA applied. It did, however, allocate to the General Counsel the burden of proving a refusal-to-hire violation where the NLRA's applicability was not in question. The NLRB acknowledges that <u>FES</u> was its response to this Court's 1998 decision in <u>Fluor Daniel</u>, and in that decision the Court expressly held that such allocations of the burden of proof were APA decisions entitled to no deference.

The Beacon and <u>Toering</u> cases, on the other hand, clearly did ask the NLRB to properly allocate the burden of proving that the NLRA protected the alleged discriminatees. In Beacon's case, as discussed in Beacon's Main Brief to this Court, the NLRB erroneously applied <u>FES</u> in such a way as to preclude any proof, by either party, on whether the alleged discriminatees were "employees" protected

by the NLRA.[26] In Toering, the NLRB finally conceded that "the General Counsel's burden of proof in all hiring discrimination cases includes the burden to prove that the alleged discriminate was an applicant entitled to protection [of the NLRA]."[27] By its plain language, the NLRB's Toering decision involved an allocation of the burden of proof[28] of an element of the alleged violation,[29] and for that reason plainly involves an application of the APA to which this Court owes no deference. The only difference between the NLRB's treatment of the burden-of-proof issue in Toering and Beacon is that, in the Beacon case, the NLRB erroneously reached the exact opposite conclusion a few months earlier without

---

[26] The NLRB itself confirmed that it was purporting to apply FES when, in 2003, it remanded the case back to an ALJ with instructions that Beacon not be permitted to introduce evidence on the issue of whether the alleged discriminatees were bona fide applicants entitled to the protection of the NLRA as "employees." Apx. 284. As discussed above, nothing in FES actually requires that result.

[27] Toering, 351 N.L.R.B. at 233. The General Counsel's Memorandum, cited in footnote 43 of Beacon's Main Brief, likewise admits that the NLRB "changed the burden of proof required." NLRB, Office of the General Counsel, Memorandum GC 08-04 (rev. Feb. 15, 2008) at 1.

[28] The NLRB may argue that the Beacon case, Toering, and perhaps even FES all merely involve varying degrees of presumptions, which federal agencies may shift without running afoul of Section 7(c) of the APA. Some cases do support the proposition that a presumption affects the burden of production, not the burden of proof. See, e.g., Glen Coal Co., 147 F.3d 502; Garvey, 190 F.3d 571 (every circuit that has reviewed a presumption finds it to be a matter of the burden of production). None of these cases, however, involve situations in which the "presumption" was, in the words of Toering, "conclusive." These cases finding presumptions permissible in the context of Section 7(c) involve rebuttable presumptions, which give the respondent the opportunity to test the government's case and challenge its evidence. Fluor Daniel and Beacon's case are different because they dealt with the NLRB's attempt to enforce a conclusive presumption. Such a conclusive presumption on an element of the alleged violation was impermissible in Fluor Daniel and is equally impermissible here.

[29] Namely, that the NLRA applies to the conduct in question.

articulating a reason why. Thus, the NLRB's treatment of that issue in Beacon's case is similarly an application of the APA and is not entitled to deference by this Court.

## IV. THE NLRB'S ORDER AT ISSUE IN THIS CASE IS NOT ENFORCEABLE REGARDLESS OF THE RESOLUTION OF THE COURT'S QUESTION

Without repeating its Main Brief in its entirety, Beacon notes that the NLRB's conduct in the Beacon case did not merely allocate the burden of proof of the applicability of the NLRA to Beacon. The NLRB went even further, and for ten years affirmatively and repeatedly stopped Beacon from proving that the NLRA did not protect the alleged discriminatees. How could it do this?

The answer is straightforward and conclusively addresses the Court's fundamental question: the NLRB could do this because it failed to allocate any burden of proof to the General Counsel to establish that the "applicants" were real, i.e. bona fide. Without any burden of proof on the issue, the General Counsel needed to present no evidence. Without evidence or an issue to address, Respondent Beacon could be prevented from responding. Thus, the Administrative Law Judge could take his consistent position that the bona fide status of the applicants was not an issue in the case. If the General Counsel had been required to meet any burden with respect to the issue, then Beacon would have been entitled to respond.

This was far more than an impermissible shifting of the burden of proof to Beacon. This was a wholesale abandonment of the idea that the NLRA must apply to conduct that the NLRB seeks to sanction under the NLRA. To state it another way: even if the Court somehow holds that the NLRB could have permissibly imposed upon Beacon the burden of proving the inapplicability of the NLRA, the NLRB's Order would <u>still</u> be fatally flawed because Beacon was denied the opportunity to meet that burden. For that reason, the NLRB's Order is not enforceable regardless of the resolution of the question presented for supplemental briefing.

## V. <u>CONCLUSION</u>

The Court owes no deference to any position adopted by the NLRB regarding the allocation of the burden of proof that alleged discriminatees are entitled to the protection of the NLRA. Any position taken by the NLRB on that issue is nothing more than the NLRB's application of the APA. Whether the NLRB acknowledges it as such or not is as irrelevant in Beacon's case as it was in this Court's 1998 <u>Fluor Daniel</u> decision. A move from one such position to another cannot receive deference, and this Court should accordingly afford the NLRB's decisions no deference in that regard.

Respectfully submitted,

/s/ Fred A. Ungerman, Jr.
Fred A. Ungerman, Jr.
Timothy G. Pepper
**TAFT STETTINIUS & HOLLISTER LLP**
110 North Main Street, Suite 900
Dayton, Ohio  45402
Phone:	(937) 228-2838
Fax:	(937) 228-2816

*Counsel for Respondent*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing Supplemental Brief of Respondent was transmitted to the following opposing counsel via electronic filing this 26th day of March, 2009.

David A. Seid, Esq.
Jill A. Griffin, Esq.
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570

/s/ Timothy G. Pepper
Timothy G. Pepper