No. 07-2554

# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

**BEACON ELECTRIC COMPANY**
*Petitioner-Appellant,*

v.

**NATIONAL LABOR RELATIONS BOARD,**
*Respondent-Appellee.*

## PETITION FOR PANEL REHEARING

TIMOTHY G. PEPPER (0071076)
TAFT STETTINIUS & HOLLISTER LLP
40 NORTH MAIN STREET, SUITE 1700
DAYTON, OHIO 45423
PHONE:   (937) 228-2838
FAX:   (937) 228-2816

*Counsel for Petitioner-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................. 1

III. ARGUMENT ................................................................................................ 4

    A. The Panel Erred in Finding Substantial Evidence on the Record to Support 8(a)(1) and (3) Violations for All 49 Alleged Discriminatees. ........................................................................ 4

    B. The Panel Erred in Deferring to the Board's Allocation of the Burden of Proof in Its Application of FES to Applicant's Bona Fide Status. ................................................................................. 10

        1. Toering Simply Acknowledges Long-Standing Law and Does Not Establish a New Definition of Employee or a New Element of the General Counsel's Prima Facie Case. ................................................................................. 10

        2. The Panel Erred in Deferring to the Board's Application of FES because the Framework Fails to Allocate the Burden of Persuasion to the General Counsel as Required by the APA. .......................................... 12

IV. CONCLUSION ...........................................................................................15

CERTIFICATE OF SERVICE ................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938)..................................................5

Dir., OWCP v. Greenwich Collieries, 512 U.S. 267 (1994).................................. 12

FES (a Div. of Thermo Power), 331 NLRB 9 (2000). ....................................... 1, 13

Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121 (1997). .............................. 14

NLRB v. Beacon Elec. Co., 07-2554, 2012 WL 1560439 (6th Cir. May 4, 2012). ................................................................................................................. 1, 6

NLRB v. Beacon Elec. Co., 350 NLRB 238 (2007)..................................................9

NLRB v. Elias Brothers Big Boy, Inc., 327 F.2d 421 (6th Cir. 1964) ................... 10

NLRB v. Fluor Daniel, Inc., 161 F.3d 953 (6th Cir. 1998) ............................. 12, 14

NLRB v. Leading Edge Aviation Serv., Inc., 212 Fed. Appx. 193 (4th Cir. 2007) ............................................................................................................... 11

NLRB v. Ohio Masonic Home, 892 F.2d 449 (6th Cir. 1989) .................................5

NLRB v. Sears, Roebuck, and Co., 170 NLRB 533 (1968) ................................... 10

NLRB v. Toering Elec. Co., 351 NLRB 225 (2007).............................. 3, 11, 13, 14

NLRB v. Town & Country Elec. Co., 86 U.S. 85 (1995)........................... 10, 11, 12

NLRB v. Town & Country Elec. Co., 309 NLRB 1250 (1992) ........................ 5, 10

NLRB v. Wright Line, 662 F.2d 899, 905 (1st Cir. 1981) ............................... 12, 14

Phelps Dodge Corp. v. NLRB, 313 U.S. 177 (1941).............................................. 13

Ultrasystems W. Constructors v. NLRB, 18 F.3d 251, 258 (4th Cir. 1994) ...... 5, 11

**Statutes**

5 U.S.C. § 556(d) ............................................................................... 5, 12

5 U.S.C. § 706 .......................................................................................9

29 U.S.C. § 152(3) ........................................................................ 11, 12

29 U.S.C. § 156 ................................................................................. 12

29 U.S.C. § 160 ....................................................................................5

**Rules**

Fed. R. App. P. 40 ................................................................................1
.

## I. INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 40, Petitioner-Appellant Beacon Electric Company ("Beacon") respectfully petitions the Court for Panel rehearing of its May 4, 2012, decision in <u>National Labor Relations Board v. Beacon Electric Co.</u>,[1] which granted enforcement to the order of the National Labor Relations Board ("NLRB"). In granting enforcement, the Panel made a clear error of fact in finding that the General Counsel presented sufficient evidence in the record as to the bona fide status for each of the 49 alleged discriminatees. No reliable or probative evidence exists in the record as to the bona fide status for 38 of the 49 alleged discriminatees. Thus, contrary to the Administrative Procedure Act ("APA"), the decision was not supported by substantial evidence in the record. Moreover, the Panel made clear legal error as to the statutory authority of the Board to use the <u>FES</u>[2] framework and its deference to the Board's decision. For the reasons stated, Beacon respectfully requests Panel rehearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 18, 1997, the International Brotherhood of Electrical Workers, Local Union No. 212, AFL-CIO ("Union") filed an unfair labor practice charge stemming from the Union's salting activities at Beacon's office in Cincinnati. On January 28, 1998, the General Counsel filed a complaint alleging that Beacon

---

[1] <u>NLRB v. Beacon Elec. Co.</u>, 07-2554, 2012 WL 1560439 (6th Cir. May 4, 2012).
[2] <u>FES (a Div. of Thermo Power)</u>, 331 NLRB 9 (2000).

1

violated § 8(a)(1) and (3) of the National Labor Relations Act ("Act") when it refused to hire or consider for hire 49 Union applicants. Beacon denied anti-union animus and asserted its policy of hiring exclusively by referral. Beacon also contested the sincerity of the applicants' interest in employment. At the evidentiary hearing the ALJ limited questions relating to the bona fide status of the alleged discriminatees, reserving such determinations for compliance proceedings.

On July 14, 1998, the ALJ found Beacon's refusal to hire based in Union animus and all alleged discriminatees to be bona fide applicants. Beacon filed exceptions to the decision, including several related to the ALJ's findings of bona fide status. On June 9, 2000, the Board remanded the case for further consideration based on its May 11, 2000 <u>FES</u> decision, which presented a new legal framework for analyzing refusal-to-hire and refusal-to-consider allegations. Beacon requested to reopen the record to submit evidence related to elements of the <u>FES</u> framework; the ALJ denied Beacon's request. Beacon filed exceptions arguing error in refusing to reopen the record and the General Counsel's failure to make a prima facie case under <u>FES</u>. Beacon also incorporated prior exceptions regarding rulings on bona fide status.

On July 28, 2003, the Board remanded the case ordering the ALJ to reopen the record to give Beacon the opportunity to further demonstrate its affirmative defense that it would not have hired the alleged discriminatees, even in the absence

of their union activity or affiliation. Beacon rested on the existing record because under its referral hiring policy, Beacon would not have hired the applicants anyway. On the affirmative defense, the ALJ found Beacon failed to meet its burden of proof and Beacon filed exceptions. On July 12, 2007, the Board applied FES and upheld the ALJ's decision that the referral policy was pre-textual and that Beacon violated the Act.

On October 11, 2007, Beacon filed a motion for reconsideration in light of the Board's September 29, 2007, decision in Toering[3]. Beacon argued that in Toering, the Board finally recognized the arguments advanced by Beacon since 1998 and had finally recognized the requirements of the Act. The Board denied Beacon's motion for rehearing and sought enforcement of its order.

On May 4, 2012, the Panel granted enforcement of the Board's order. The Panel indicated that FES was applied correctly and did not exceed the Board's statutory authority under the APA, and adopted Toering as an allowable Board interpretation of the definition of a statutory employee and of the elements required for refusal-to-consider cases. Finally, the Panel found that under Toering, the bona fide status of all alleged discriminatees was litigated fully, and that their bona fide status was found as fact based upon the record.

---

[3] Toering Elec. Co., 351 NLRB 225 (2007).

## III. ARGUMENT

### A. The Panel Erred in Finding Substantial Evidence on the Record to Support 8(a)(1) and (3) Violations for All 49 Alleged Discriminatees.

Since no record evidence shows the bona fide applicant status of even a majority of the alleged discriminatees, the Panel's finding that substantial evidence in the record demonstrates the bona fide applicant status of all 49 alleged discriminatees is clear error.

During the evidentiary hearing, the General Counsel examined only eight alleged discriminatees. (J.A. 510–97, 728-853.) Counsel for Beacon examined three additional alleged discriminatees. (J.A. 1148–93.) In all, 11 of the alleged 49 discriminatees testified as to their subjective, good-faith intent to seek employment with Beacon. (See generally, J.A. 580, 617, 666, 729, 759, 791, 809, 834, 1168, and 1193 for testimony of Matt Kolbinsky, Ken Mueller, Charles Fribourg, Steve Jaeger, Walt Zimmer, Thomas Lana, Wayne Whalen, Paul Mahoney, Paul Elbisser, Jr., Eleanor Kumler and Tony Wartman, respectfully.) The only other evidence presented at the hearing consisted of Union sign-in logs, Zimmer's salt log, and audio and videotapes of salting activities. (J.A. 335–87.) When combined, the logs, tapes and testimony (which are inconsistent) show attendance at and participation in these salting activities. (E.g., for inconsistent testimony and information, compare J.A. 667, 679, 682-83 with J.A. 350 for

4

Fribourg testimony inconsistent with Union log; compare J.A. 341, 342 with J.A. 366 and 367 for inconsistent Zimmer salting log and Union log information; compare J.A. 364 and 365 with J.A. 816 for Zimmer testimony inconsistent with his own salting log; compare J.A. 335-350 with J.A. 834-35 for Wartman testimony inconsistent with Union log). And standing alone, the logs and tapes provide no evidence of any alleged discriminatee's subjective, good-faith intent to seek employment with Beacon.

The APA requires that substantial record evidence support all NLRB orders. 5 U.S.C. § 556(d); 29 U.S.C. § 160; Consol. Edison Co. v. NLRB, 305 U.S. 197, 216 (1938); NLRB v. Ohio Masonic Home, 892 F.2d 449, 451 (6th Cir. 1989). In this regard, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison, 305 U.S. at 217. "Mere uncorroborated hearsay or rumor does not constitute substantial evidence." Id. And without substantial evidence that the applicant is bona fide—that he has a subjective, good-faith intent to seek employment with a company—the Act does not provide a remedy. See NLRB v. Town & Country Elec. Co., 309 NLRB 1250, 1258 n.34 (1992) (noting that a bona fide applicant is "able, available, and fully intends to work for the employer if hired"); see also Ultrasystems W. Constructors v. NLRB, 18 F.3d 251, 256 (4th Cir. 1994) (observing that in order to be afforded rights of an

5

"'employee,' the applicant must, in good faith, be seeking to become an employee").

In applying FES to the facts in the record, the Panel found "[t]he record supports that the *witnesses* were unemployed and actively seeking employment when they applied." NLRB v. Beacon Elec. Co., 2012 WL 1560439, at *12 (emphasis added). While there is no mention of the 38 alleged discriminatees who were not witnesses and did not testify, this Panel then found the decisions of the ALJ and Board as to all 49 supported by "adequate" evidence. In applying Toering to the facts in the record, the Panel again erroneously found that sufficient evidence existed to establish the bona fide applicant status of all 49 alleged discriminatees. A review of the evidence on which this Panel decided that the genuine interest of all "was found as fact based on the record," id. at 16, shows the clear error in the Panel finding.

Eleven alleged discriminatees testified and provided (substantially untested) evidence of their subjective, good faith intent to secure a job at Beacon.

Videotapes provided evidence that 30 alleged discriminatees went, at least once, to Beacon's shop. The audio tapes provided evidence that five additional alleged discriminatees gathered. The tapes, on their own, show nothing more.

At the very best, the logs show (sometimes) that the alleged discriminatees may have been involved in salting activities in Beacon's Cincinnati office and

6

parking lot. While one Union organizer, Matt Kolbinsky, agreed with the General Counsel's characterization of the salting log from the Organizing Department at the Union hall as the "written record of Union members who attempted to apply for employment" at Beacon, his knowledge of who actually "signed" the log was limited to "some occasions" where he watched the Union members sign the log and one occasion he wrote down the Union members for the day. (J.A. 525-34, 601-05.) Otherwise, his knowledge and recognition of all of the other *signatures* was limited to the log itself. (Id.) In other words, unless Kolbinsky wrote the names in the log or watched the Union member sign, he really had no idea who scripted names in the log (except for when Ken Mueller wrote the names of everybody that was supposedly there). And without looking at the log and reviewing the tapes, Kolbinsky only recalled that he, Mueller, Charles Fribourg, and Wayne Whalen went to Beacon on January 29 (J.A. 530, 535), that Jim Rosenberger was the "camera man" for the visit on February 21 (J.A. 540), that Ron Smith made the March 6 recording (J.A. 555), and that Steve Dunaway made the March 11 recording (J.A. 555). On his own memory, Kolbinsky had no testimony as to other Union members. In addition, Kolbinsky's testimony as to the other Union members' purpose is speculative and not probative of those members' individual, subjective intent—he simply did not know who was employed or unemployed on the days the Union members supposedly "signed" the logs, which

Union member names were written in by others on the logs, or who even went to the Beacon shop. (See J.A. 593.)

Mueller's testimony fared no better. He observed some people sign, but otherwise did not know whose names were written in the logs or who went to Beacon (specifically or generally) without looking at the logs. (J.A. 638-42.) Despite discussing the practice of signing the Union log before leaving the Organizing Department for Beacon, Mueller admits that no one signed the log for a visit to Beacon on April 17 but somehow produced audio tape that supposedly recorded a visit to Beacon on that date. (J.A. 639, 642.)

With the exception of January 29, the only day where all testimony and logs match, the other Union members who testified generally had no independent recollection of who went to Beacon's shop, much less on what day. Unless they looked at the Union log or Zimmer's salting log, they could only state, and not always consistently with the logs, who they rode with to Beacon on one trip or another.

At the end of the evidentiary hearing, there may have been substantial evidence that Kolbinsky, Mueller, Fribourg and Whalen all applied for employment at Beacon on January 29. As to the other union Members and other days, there is scattered, unreliable and non-probative information about maybe going to Beacon and maybe needing a job and maybe applying for a job.

Contrary to the ALJ's order, the evidence in the record does not support that a "*majority* of the alleged discriminatees were unemployed and were seriously interested in engaging in employment . . . ." NLRB v. Beacon Elec. Co., 350 NLRB 238, 250 (2007) (emphasis added). As shown above, there is no reliable or probative evidence as to the bona fide status of a *majority* of discriminatees. While there may be substantial evidence as to four and additional untested evidence as to another seven, the sum of 11 is not the majority of the 49 alleged discriminatees. And in any case, evidence as to a "majority" does not equate to substantial evidence as to each and every alleged discriminatee. Thus, the finding of violations regarding all 49 alleged discriminatees is not supported by substantial evidence on the record as to each alleged discriminatee.

The General Counsel failed to establish substantial evidence in the record as to the bona fide status of 38 of the alleged 49 discriminatees. In fact, for these 38 alleged discriminatees, the record is totally devoid of reliable and probative evidence of their subjective, good-faith intent to seek employment. The Panel's finding that a complete lack of any reliable and probative evidence in the record equates to substantial evidence is clear error. Consequently, the Court should grant a Panel rehearing based on the clear error of fact, and pursuant to the APA, 5 U.S.C. § 706, set aside the Board decision because it is not supported by substantial evidence on the record.

B.  **The Panel Erred in Deferring to the Board's Allocation of the Burden of Proof in Its Application of <u>FES</u> to Applicant's Bona Fide Status.**

1.  **<u>Toering</u> Simply Acknowledges Long-Standing Law and Does Not Establish a New Definition of Employee or a New Element of the General Counsel's Prima Facie Case.**

Since at least 1968, the NLRB has acknowledged protection under the Act requires a bona fide employee. <u>NLRB v. Sears, Roebuck, and Co.</u>, 170 NLRB 533, 535 (1968). In <u>Sears</u>, the Board held that a paid union organizer was a bona fide employee. <u>Id.</u> But the Board recognized a lack of genuine interest in employment to be problematic, noting "if he seeks only temporary employment in order to organize, and withholds from his employer the fact that he seeks only temporary employment, a different result might follow." <u>Id.</u> The Board again acknowledged the issue of bona fide status in its <u>Town & Country</u> decision in 1992, stating that a paid union organizer is only an employee under the Act if he "fully intends to work for the employer if hired." <u>NLRB v. Town & Country Elec. Co.</u>, 309 NLRB at 1258 n.34.

In 1964, the Sixth Circuit recognized an unfair labor practice does not occur where there is no bona fide employee within the intent of § 2(3) of the Act and held that a paid union organizer was not a bona fide employee. <u>NLRB v. Elias Brothers Big Boy, Inc.</u>, 327 F.2d 421, 427 (6th Cir. 1964). Though the holding would be rejected by the Supreme Court in <u>NLRB v. Town & Country Elec. Co.</u>,

10

516 U.S. 85 (1995), the long-standing need for a bona fide employee has never been challenged.

In 1994, the Fourth Circuit set forth a prima facie case in refusal-to-consider and refusal-to-hire cases that required proof of a bona fide applicant (thus an employee under the Act). Ultrasystems, 18 F.3d at 256; see also NLRB v. Leading Edge Aviation Serv., Inc., 212 Fed. Appx. 193, 199 (4th Cir. 2007) (applying Ultrasystems' elements of proof).

For more than 40 years, bona fide status has been an acknowledged requirement to meet the definition of "employee" under § 2(3) of the Act; its role has been recognized as an element of proof in the General Counsel's prima facie case since 1994. Thus, Toering simply acknowledged what has long been the law—prima facie proof of genuine interest in employment is required to establish a § 2(3) employee under the Act.

Toering does not redefine what constitutes an "employee" under the Act. Even the Board characterized its holding in Toering as "consistent with statutory policy, Supreme Court precedent and Board practice" and conceded that its holding was not "revolutionary." Toering, 351 NLRB at 228.

### 2. The Panel Erred in Deferring to the Board's Application of FES because the Framework Fails to Allocate the Burden of Persuasion to the General Counsel as Required by the APA.

The Panel erred in holding that the application of the FES framework within the statutory authority of the Board as opposed to the APA. The NLRB is an administrative agency and is bound by the APA. 29 U.S.C. § 156. Section 7(c) of the APA requires that the proponent of a rule or order bear the burden of proof. 5 U.S.C. § 556(d). While the burden of production may be shifted to the opponent of an order, burden shifting is only permissible once the General Counsel satisfies every element of his prima facie case. See Dir., OWCP v. Greenwich Collieries, 512 U.S. 267, 278 (1994) (holding that a "party initiating the proceeding has the general burden of coming forward with a prima facie case"); NLRB v. Fluor Daniel, Inc., 161 F.3d 953, 966 (6th Cir. 1998) (stating that "[o]nce the General Counsel proves each element of the statutory violation—but only after he does so—the employer must come forward with evidence"); Wright Line, a Division of Wright Line, Inc., 251 NLRB 1083, 1087 (1980), enforced, 662 F.2d 899 (1st Cir. 1981) (only after prima facie case and a violation are established can the burden be shifted).

To establish a violation of the Act, and to prove his prima facie case, the General Counsel must first establish the Act's applicability. See Town & Country Co., 516 U.S. at 89 (rights of the Act only apply to those that meet the § 2(3)

12

definition of employee). Applicants for employment have been determined to meet the definition of an "employee" under the Act. Id. at 88 (summarizing holding in Phelps Dodge Corp. v. NLRB, 313 U.S. 177 (1941) that applicants are employees). As discussed above, however, an applicant must be bona fide with a subjective, good-faith intent to seek employment before they are considered to be an "employee" under the Act. Supra § III.B.1. Therefore, as a threshold matter, the General Counsel must prove at the unfair labor practice stage that each applicant claiming discrimination is a bona fide applicant entitled to protection under the Act.

Proof of bona fide applicant status was not an issue in FES. See FES, 331 NLRB 9 (2000). Therefore, the resulting FES framework assumes the bona fide status of the applicant and relieves the General Counsel of its burden of proving an element of its prima facie case. FES, contrary to the words of Toering, does not "implicitly presume" any applicant's genuine interest. Toering, 351 NLRB at 231. If that were so, rebuttal to challenge the genuine interest would be allowed before the ALJ in the unfair labor practice stage, instead of relegated to the compliance stage as in this case.

Rather, the FES construct as applied in this case, where the facts before the ALJ and Board (1) put bona fide status in issue, (2) relieved the General Counsel of his burden of proof of bona fide status and is thus impermissible under Section

13

7(c) of the APA, and in any case, (3) is entitled to no deference. See Flour Daniel, Inc., 161 F.3d at 967 n.16.

Toering allocated the burden of proof of an element of the General Counsel's prima facie case, which is ultimately governed by section 7(c) of the APA. See Flour Daniel, 161 F.3d at 967 n.16. Despite recognizing the deference law of Flour Daniel to also be the law of this land (citing to Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 137 n.9 (1997)), the Panel chose to ignore it as a "distinction [not] relevant here." In ignoring its own precedent, the Panel clearly erred in holding the use of the FES framework to be within the statutory authority of the NLRB and in enforcing the Board's order under FES.

The Panel's deference to and application of the Toering framework also allows a burden shifting of the General Counsel's prima facie case. See Toering, 351 NLRB 225. Pursuant to Toering, bona fide applicant status is presumed unless the employer produces evidence to place the bona fide status of the applicant into issue. Id. Only then must the General Counsel must meet the ultimate burden of persuasion. Id. The Wright Line burden-shifting framework, which shifts the burden to the employer only after the General Counsel has presented his prima facie case, is not present in Toering. Wright Line, 662 F.2d at 905.

Only the Fourth Circuit's Ultrasystems framework requires the General Counsel to prove an applicant's bona fide status as an element of his prima facie

case before the employer must produce any evidence as to its affirmative defenses. Consequently, it also requires that the General Counsel prove the applicability of the Act before proceeding. Thus, the Ultrasystems framework clearly complies with the APA's procedural requirements and the requirements of the Act.

## IV. CONCLUSION

For the reasons given above, this Court should grant rehearing of the May 4, 2012, decision to enforce the order of the National Labor Relations Board.

Respectfully Submitted,

s/ Timothy G. Pepper
Timothy G. Pepper
TAFT STETTINIUS & HOLLISTER LLP
40 NORTH MAIN STREET, SUITE 1700
DAYTON, OHIO 45423
PHONE: (937) 641-1740
FAX: (937) 228-2816

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed and served this 18th day of June, 2012, using the Court's electronic filing system, upon the following:

Linda Dreeben
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street, NW
Suite 8100
Washington, DC 20570

    s/Timothy G. Pepper
    Timothy G. Pepper